1
2
3
4
5
6
7
8                       **UNITED STATES DISTRICT COURT**

9                      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SAN DIEGO NAVY BROADWAY                    CASE NO: 07-CV-909 W (POR)
     COMPLEX COALITION,
12                                              **ORDER DENYING NAVY'S**
13                              Plaintiff,       **MOTION FOR SUMMARY**
                                                **JUDGMENT OF THE FOIA**
14        v.                                    **CLAIM [DOC. 6]**

15
     UNITED STATES DEPARTMENT
16   OF THE NAVY, et. al.,

17
                               Defendants.
18

19        On August 17, 2007, Defendant United States Department of the Navy ("Navy")

20   filed a summary-judgment motion.  On January 9, 2008, the Court issued an ordering

21   continuing the motion as to Plaintiff's Freedom of Information Act ("FOIA") claim,

22   and granting the motion as to the Administrative Procedure Act ("APA") claim and

23   defendant Donald C. Winter.  On February 8, 2008, the parties filed their supplemental

24   briefing on the FOIA claim.

25        The Court decides the matter on the papers submitted and without oral

26   argument under Civil Local Rule 7.1(d.1).  For the reasons addressed below, the Court

27   **DENIES** the Navy's motion for summary judgment of the FOIA claim.

28

## I.   BACKGROUND

The following factual summary is undisputed and repeated from the Court's previous order.

On October 4, 2005, the Navy solicited proposals for the development of a portion of what is known as the Broadway Complex in San Diego.  Manchester Pacific Gateway, LLC ("Manchester") was one of the proposers who submitted proprietary and confidential financial and commercial information to the Navy.  On November 22, 2006, the Navy awarded the solicitation to Manchester, and the parties entered into a Real Estate Ground Lease for Broadway Complex, Lease No. N6247307RP07P24 (the "Lease").

On January 10, 2007, Plaintiff submitted a FOIA request to the Navy for a complete and unredacted copy of the Lease.  The Navy denied the request.  After an unsuccessful administrative appeal, Plaintiff filed this lawsuit against the Navy and Donald C. Winter, in his official capacity as Secretary of the Navy.  The Complaint asserts claims for violation of FOIA and the APA.

The Navy responded to the Complaint by filing a summary-judgment motion. On January 9, 2008, the Court granted the motion as to Plaintiff's APA claim and defendant Winter.  With respect to the FOIA claim, however, the Court found that the record was insufficient to support the Navy's claim that redactions of entire portions of the Lease were appropriate under Exemption 4 to FOIA.  The Court, therefore, continued the motion to give the Navy an opportunity to supplement the record.  The matter is now fully briefed.

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it

could affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  Id. at 322–23.  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

## III.  ANALYSIS

FOIA was enacted "to promote honest and open government" and "to ensure public access to information created by the government. . . ."  Wood v. FBI, 432 F.3d 78, 82 (2nd Cir. 2005) (citations omitted).  Because FOIA favors a policy of disclosure, the statutory exemptions are construed narrowly, resolving all doubts in favor of disclosure.  Lion Raisins v. U.S. Dept. Of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004).

Exemption 4 of FOIA excepts the disclosure of commercial or financial information that is "privileged or confidential."  Frazee v. U.S. Forest Service, 97 F.3d 367, 370 (9th Cir. 1996); 5 U.S.C. § 552(b)(4).  Relevant in evaluating whether Exemption 4 applies is if the information "would customarily not be released to the public by the person from whom it was obtained."  Critical Mass Energy Project v. Nuclear Regulatory Commission, 975 F.2d 871, 874 (D.C.Cir. 1992).  This, however, is not the only factor.  The "court must also be satisfied that non-disclosure is justified by

the legislative purpose which underlies the exemption."  Id. (citing National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 767 (D.C. Cir. 1974)).

In general, Exemption 4 serves both a governmental and private interest.  It serves the government interest by encouraging individuals to provide certain kinds of confidential information that will assist the Government in making intelligent, well informed decisions.  Critical Mass, 975 F.2d at 874.  Private interests are served by protecting those who submit financial or commercial data to government agencies from the competitive disadvantages that would result from publication.  Id.

In Frazee, the Ninth Circuit adopted the test established in National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974), for determining whether commercial or financial information is "confidential."  The test provides that information is "confidential" if disclosure "is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  Id. (quoting National Parks, 498 F.2d at 770).

"Where the Government withholds documents pursuant to one of the enumerated exemptions of FOIA, 'the burden is on the agency to sustain its action.'" Lion Raisins, 354 F.3d at 1079.  The government may rely on affidavits to establish that an exemption applies.  Lewis v. Internal Revenue Service, 823 F.2d 375, 378 (9th Cir. 1987).  The affidavits, however, must demonstrate that the affiants are knowledgeable about the information sought and must include sufficient detail about the documents to allow the court to make an independent assessment of the government's claim.  Lion Raisins, 354 F.3d at 1072 (Relying on affidavit that included "detailed and specific descriptions of each category of information included" on the document.).

//

//

**A.** **Time periods.**

1    The Navy redacted time periods from sections 5.3 and 8.1 of the Lease.  These
2    time periods relate to deadlines that trigger special obligations and liquidated damages.
3    As the Court found in the previous order, the Navy has satisfied its burden of
4    demonstrating that disclosure would cause substantial competitive harm to Manchester
5    because its competitors and potential sub-contractors could use the
6    information–particularly the deadlines triggering liquidated damages–in negotiations
7    related to the project. (Gibbon's Decl., ¶10.)  Accordingly, the redacted time frames
8    constitute confidential information that is covered by Exemption 4.

9

10        **B.    <u>Financial figures.</u>**

11    The Navy has redacted dollar amounts from the following provisions of the
12    Lease: Sections 5.2.4, 5.3, 5.4, 5.6.1, and 5.6.2; Development Fee from Section 5.2.5;
13    Property Management Fee from Section 5.5; and the Construction Consultant Contract
14    (Exhibit C-2 to the Lease).

15    The Court previously found that the financial figures redacted from sections
16    5.2.4, 5.3, 5.4, 5.6.1 and 5.6.2 are covered by Exemption 4.  These redactions are
17    appropriate because the financial figures represent, among other things, Manchester's
18    breakdown for the Project's funding, including costs for environmental cleanup and
19    demolition, distribution of cost savings and overruns, and liquidated damages.

20    The dollar amounts redacted from the Construction Consultant Contract appear
21    to represent the costs of services that Manchester procures from third parties.  (<u>See</u>
22    Gibbons Decl., ¶20.)  Such costs are confidential under Exemption 4.  <u>See</u> <u>McDonnell</u>
23    <u>Douglas Corp. v. United States Department of the Air Force</u>, 375 F.3d 1182, 1190
24    (D.C. Cir. 2004) (holding that costs of materials and services McDonnell Douglas
25    procures from other vendors is confidential under Exemption 4.)

26    With respect to the Navy's redaction of the amount of the Development Fee and
27    the Property Management Fee, the Court's previous Order questioned whether these
28    redactions were covered under Exemption 4 because prices awarded in government

contracts are generally considered public information.  (Order at p.5: 17–18, <u>citing</u> <u>AT&T Information Systems, Inc. v. General Services Admin.</u>, 627 F.Supp. 1396 (D.D.C. 1986).)  In its supplemental brief, the Navy has agreed to disclose the Property Management Fee in section 5.5.  Accordingly, that issue has now been resolved.  The Navy, however, continues to assert that the Development Fee constitutes confidential information covered by Exemption 4.

The Development Fee represents the amount Manchester will receive "for day-to-day management, coordination and evaluation (as applicable) of the activities" of various third parties involved in the project.  (Lease, Ex. E at p.9.)  The Navy contends that this fee is confidential because it does not represent the final amount that Manchester will be paid.[1]  Rather, the fee will allegedly be affected by future contracts that Manchester expects to enter relating to the project.

There are two problems with the Navy's argument.  First, nothing in Section 5.2.5 supports the claim that the Development Fee is subject to renegotiation.  The first and second sentences of the section define Manchester's Development Services.  (Lease at p.9.)  The third sentence identifies the amount of the fee.  (<u>Id.</u>)  The last sentence states that the fee will be paid in twenty-seven equal monthly installments.  (<u>Id.</u>)  None of these sentences suggest that the Development Fee is subject to change, and the Navy has not identified any other provision in the Lease that allows for renegotiation of the fee.  Accordingly, the Development Fee appears to represent the final amount that Manchester will be paid for the development services.

Second, even if the fee is subject to renegotiation, the Navy has failed to establish that the fee is confidential under the <u>National Parks</u> test.  This test requires the Navy to establish that disclosure would either (1) impair the Government's ability to obtain necessary information in the future or (2) cause substantial harm to Manchester's

---

[1]The Navy's Supplemental Brief states that the redacted figure does not represent the "final amount that *Manchester* will pay to the *Navy*."  (Supp. Brief at 3:22, emphasis added.)  The Court assumes this is a typographical error based on the language of Section 5.2.5 ("Lessee [i.e., Manchester] shall be entitled to" the Development Fee).

competitive position.  <u>National Parks</u>, 498 F.2d at 770.  The Navy appears to be relying solely on the second interest.  Specifically, the Navy alleges that disclosure of the Development Fee would harm Manchester by allowing "competitors to discern Manchester's bidding methods, give competitors access to Manchester's otherwise internal and non-public confidential information, and promote forecasting and undercutting of Manchester's offers in future ground lease opportunities and future consideration fees for any such offers."  (Gibbons' Decl. at ¶8.)

Although the Navy has identified the type of injury Manchester might suffer, the Navy has not explained how the injury would result from disclosure of the fee.  Instead, the Navy is relying on conclusory allegations of substantial competitive harm.  More is required.  <u>See</u> <u>McDonnell Douglas Corp.</u>, 375 F.3d 1182, 1187 (D.C. Cir. 2004) (holding that under <u>National Parks</u>, it was appropriate to require the company seeking to keep information confidential to demonstrate "with certainty" that disclosure would allow competitors to reverse engineer the Company's sensitive information).

Based on the current record, it is difficult to discern how Manchester is likely to suffer substantial competitive harm if the information is disclosed.  Even assuming that the amount of the Development Fee was subject to renegotiation between the Navy and Manchester, there is no indication that the Navy could seek alternative bids from Manchester's competitors.  In the absence of actual competition for the development services, it is unclear how disclosure would harm Manchester in future renegotiations with the Navy.

Moreover, the Court assumes that the Development Fee was the result of negotiations between Manchester and the Navy.  As such, the Court is at a loss to understand how disclosure of the fee would give a competitor access to Manchester's otherwise internal information, or cause any of the other alleged injuries.

For all of these reasons, the Navy has not established that disclosure of the Development Fee is covered by Exemption 4.

C.    **Redaction of entire sections and exhibits.**

The Navy redacted the entirety of the following portions of the Lease: Sections 5.8, 6.4, 6.5, 6.6, 6.7, 6.8, 6.9, the Form of Design/Build Contract (Exhibit C-1), the GAF Work Letter (Exhibit C-3), and the Form of Guaranty (Exhibit H).  The Court previously found that the record was insufficient to allow an independent determination of whether Exemption 4 applies to these redactions, and ordered the Navy to submit supplemental declarations for in camera review.[2]

On February 8, 2008, the Navy filed supplemental declarations under seal that provided some additional detail regarding these provisions.  Based on those declarations, it is clear that at least some portions of certain sections and exhibits contain confidential information.  However, the record remains insufficient to allow the Court to determine the extent to which the Navy's redaction of entire sections or exhibits is appropriate.[3]

As a general matter, the declarant's supplemental descriptions of the relevant portions of the Lease provide little additional detail.  Furthermore, the Navy seeks to justify many of the redactions on the basis that "no meaningfully segregable portion could be released without harming the confidential commercial and financial interests of the Navy and Manchester."  (See e.g. Gibbons Decl., ¶16.)  Under this argument, the Navy necessarily concedes that certain information is being redacted–not because the information is confidential–but because release would produce only incomplete, fragmented or meaningless words.  See Nat'l Sec. Archive Fund, Inc. v. Cent. Intelligence Agency, 402 F.Supp.2d 211, 220–21 (D.D.C. 2005).  In order to assess this

---

[2] In its original moving papers, the Navy argued that if additional information was needed by the Court, the Navy should be allowed to submit supplemental declarations for *in camera* review, rather than an unredacted copy of the Lease.

[3] The Court also notes that the Navy has not cited, and the Court has not found, a single case in which Exemption 4 was used to justify disclosure of large sections of public contracts.  Instead, the Navy's cases appear to involve redactions of financial figures from public contracts.

07cv909w

claim, the Court must review an unredacted copy of the sections and exhibits at issue; the supplemental declarations are insufficient.[4]

Nor has the Navy established that the redactions are confidential under <u>National Parks</u>.  Just as with the Development Fee, the Navy's contention that disclosure will result in substantial competitive harm to Manchester is based largely on conclusory statements.  For example, the Navy seeks to justify the redaction of section 5.8, which contains "information that addresses specific terms of agreement. . .  in the event the value of leasehold increases, or in the event of other certain conditions or under certain circumstances."  (Gibbons' Decl., ¶16.)  According to the Navy, "mere disclosure" of the "existence of the specific terms of agreement" in this provision would create the risk of substantial competitive and financial harm to Manchester because it would enable competitors to "discern Manchester's bidding methods, give competitors access to Manchester's otherwise internal and non-public confidential commercial and financial information, and promote forecasting and undercutting of Manchester's offers in future ground lease opportunities."  (<u>Id.</u>, ¶16.)  Lacking from the declaration is any explanation regarding how disclosure of the provision would allow competitors to discern Manchester's bidding methods, or cause any of the other alleged harms.

For these reasons, the Court finds that the Navy has failed to establish that the redactions are covered by Exemption 4.

**D.      <u>Incorporation by Reference.</u>**

The Lease is incorporated by reference into a Memorandum of Lease that is filed with the Office of the County Recorder.  Citing <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 161 (1975), Plaintiff argues that the Lease's incorporation by reference into the public document waives Exemption 4.

---

[4]For the same reason, the Court believes that the record is insufficient to support the Navy's contention that the entire GAF Development Budget is covered by Exemption 4.

1    In <u>NLRB</u>, the Supreme Court held that "if an agency chooses *expressly* to ...

2    incorporate by reference an intra-agency memorandum previously covered by

3    Exemption 5 in what would otherwise be [a public document], that memorandum may

4    be withheld only on the ground that it falls within the coverage of some exemption

5    other than Exemption 5." <u>Id.</u> at 161.  Thus, although incorporation by reference

6    waived the applicability of Exemption 5, the agency could nevertheless withhold the

7    document if some other exemption, such as Exemption 4, applied.  Far from

8    supporting Plaintiff's argument, <u>NLRB</u> stands for the proposition that only Exemption

9    5 is waived through incorporation by reference.

10

11   **IV.   <u>CONCLUSION AND ORDER</u>**

12       For the reasons discussed above, the Court **DENIES** the Navy's summary-

13   judgment motion [Doc. No. 6] with respect to the FOIA claim and **ORDERS** as

14   follows:

15       •    By June 2, 2008, the parties shall file cross-motions for summary judgment

16            regarding Plaintiff's FOIA claim.  Before filing the motions, the parties

17            shall contact the Court's law clerk for a hearing date.

18       •    The Navy's summary-judgment motion shall include an unredacted copy

19            of the Lease, which shall be filed under seal.

20       The Navy's Objections to Plaintiff's Supplemental Brief [Doc. No. 25] are

21   overruled.

22

23       **IT IS SO ORDERED.**

24

25   DATED:  March 21, 2008

26

27                                                 _____

28                                                 Hon. Thomas J. Whelan
                                                   United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07cv909w